Good morning, your honors, Randy Olin for Mr. Caramadre. I'd like to reserve three minutes if I could. Yes. Thank you. Your honor, I'd like to address the court this morning regarding the principal issues which we believe mandate the reversal of Mr. Caramadre's conviction. And they are that the plea, the rule 11 colloquy was constitutionally affirmed, that the plea is invalid in any event because his attorneys did not notify the court of Mr. Caramadre's insistent, repeated, unequivocal statements to them that he would have to lie to the court in tendering his plea. And finally, that the district court abused its discretion in balancing the factors in denying the motion to withdraw the guilty plea. Your honor, at the time of the plea, Mr. Caramadre stood before the court as a person with a 25 year history of severe mental depression, for which was ongoing. He was taking five medications for depression, for severe refractory treatment resistant depression. He had been disabled from the practice of law. He had attempted the most extreme treatment options known to science, transcranial magnetic stimulation. And he was a candidate for electroshock therapy. At the onset of the colloquy, the district court asked the defendants if either one of them were suffering, had been treated for mental illness lately. Mr. Caramadre said, yes, your honor, lately and for the past 20 years. The court's response to that important information was not a word. The court did not say a word about Mr. Caramadre's mental illness. At that point, one of his attorneys stood up and said, your honor, I have a list of the medications Mr. Caramadre is taking. So we don't have to go through them. Of course, the point is that you have to go through them. In response, when he received these medications, the court's response to the medications was not one single word. He did not say a word about the mental illness. The court did not say a word about these medications. This is the entirety of the plea colloquy on this subject, your honor. With respect to Mr. Caramadre, do you fully understand the proceedings that are going on here? Yes. And nothing in terms of these medications would have any effect on your ability to comprehend? No. That's it. Colloquy over. In Sabanon Acosta, your honor, this court said that when a defendant is taking medications, the court needs to identify what medications are being taken, how recently they've been taken, in what quantity they have been taken, the purpose and the consequences of the drugs in question. In response to our challenge, the district court said, that is exactly what I did. With respect to the district court, it did not utter a single word. That is not what it did. It did no such thing. The district court further called its plea colloquy thorough and searching, thorough and searching. In light of five medications for depression, a 25 year history of severe mental illness that the court was informed of. But didn't Chief Judge Smith, at the plea withdrawal hearing, explore these allegations that you're making, and determine on a much fuller record, all right, that Caramadre was competent so that, to the extent that his plea was knowing, voluntary, and intelligent. That was the conclusion. And he had a full record at that point. And in any event, you at that point put into the record, presumably your best case about what the defendant's mental state might have been. And what effect, if any, the medications that he was taking may have had on his ability to appreciate and comprehend his situation. So don't we owe some deference to that finding? Well, Your Honor, that's why we're here, appealing that finding. Yeah, but you're not here because we owe deference to it. I'm just, I asked you a question. Don't we owe deference? Deference isn't rubber stamping. But don't we owe deference to the district court's assessment, because the district court heard these explanations. All right, heard them from the people who were most centrally involved and rejected them. So don't we start off, all right, saying that you've got to show us, not that one of us, if sitting as a trial judge, might have done something different, but that the district court abused its discretion in determining that this plea withdrawal did not meet the appropriate standard, which includes the judge's finding that the plea itself was knowing, voluntary, and intelligent. First of all, with respect to its decision on the motion to withdraw the guilty plea. Yeah. The court invoked an erroneous legal standard. You say that in your brief, and I'm puzzled by that. Because I read your brief, and I thought that was perhaps your strongest argument. But then I read Chief Judge Smith's decision, and he says, clear as a bell, right up front, the standard for withdrawal of a guilty plea in this situation is whether there is a fair and just reason. Says that, he then says, and the First Circuit has said, in considering whether there's a fair and just reason, these are the steps I have to follow. I have to determine whether the plea is knowing, voluntary, and intelligent. And then I have to consider these factors, and he lifts five other factors, all right? He makes a long discussion as to why he finds the plea to be knowing, voluntary, and intelligent. And then he goes through each of the other four or five factors that he's identified. And then at the bottom concludes that the standard hasn't been met. So I can understand an argument that Judge Smith was wrong, but I can't understand the argument that he applied the wrong standard. Because what he said, Your Honor, and he did talk about the standard in a rather nebulous way. But when he discusses the issue of the fair and just standard, his exact quote, pretty close to his exact quote, was, I find the plea to be knowing, voluntary, and intelligent. Therefore, no just reason can exist for its withdrawal. Now, you don't have to be Henry Higgins to figure out the grammatical import of that statement. He then goes on. But you've just yanked that statement out of its, loose from its moorings, all right? Because he starts off by saying that I've got to determine fair and just reason, all right? And the most important component of fair and just reason is knowing, voluntary, and intelligent. Which we don't argue with. It is probably the most serious factor. But when he comes to his decision, Your Honor, he does not abide by what he said earlier. He says, the plea's okay, therefore, no just reason exists to withdraw it. And then he goes on to say, but for completeness sake, I will briefly discuss the other factors. And he does, and resolves all of them against the defendant. There is no way to look at that and not know that he is looking at, is making his decision through the prism of the case is over, the ball game's over, if he finds the plea to be knowing, voluntary, and intelligent. To get back to your earlier question, Your Honor, with respect to what I believe is the weightiest issue here. You cannot retroactively validate an invalid plea. The plea colloquy that he gave, excuse me, may have been acceptable for a perfectly healthy person who's taken Claritin or an aspirin for his heart. But there is no way under the case law that that is remotely sufficient to ensure that Mr. Caramaggio's plea was knowing, voluntary, and intelligent, given his mental illness and given the depression meds he was taking. What if he had not uttered a word, not even engaged in the brief colloquy that you held up a minute ago? He has an obligation to ensure that the plea- Ability to understand the plea colloquy. That doesn't seem to be an argument you advance. You seem to attack the colloquy as infirm, but not any consequence of that. No, I don't think we've argued that at all, Your Honor. First of all, it's the court's obligation to make sure that Rule 11 is complied with. But we have argued that- But if a court misses a step on the Rule 11 colloquy, and it turns out to be of no consequence, must the plea be vacated? Well, I would say yes, number one. But more importantly, there's obviously consequences in this case. How can you say yes to that question? So in other words, the trial judge fails to ask the defendant whether anyone made any threats or promises to him to induce the plea. That's standard part of the plea colloquy. Doesn't ask it. And then after the fact, motion to withdraw the plea. And the evidence is, no, no one made any threats or promises to me. But the plea's got to be withdrawn because the question wasn't asked. Or the evidence is, yes, my son promised that he'd buy me dinner after this mess was over. I mean, if the omission has no consequence, Judge LaPlante's absolutely right. But there's no harmless error that applies to this- It's a question of whether the plea itself was properly taken, all right? And the fact that the defendant wasn't asked questions which wouldn't have furnished basis for not letting him plead can't possibly lead to vacation of the plea. Hypotheticals aside, Your Honor, that's not what we have here. We have the court fully aware of his mental illness and fully aware of the meds. In the Hardeman case, which is cited by the judge, by the district court. The Hardeman case says a judge is required to investigate the defendant's mental state if there are any indications, at the plea or later, that he might be incompetent to plead. The fact that the defendant seems competent when answering the judge's questions, that the plea hearing is not conclusive. Mental diseases may alter the premises of a person's thinking rather than the articulation of his outward appearance or manner. What the court should have done, Your Honor, and which would have resolved the issue, is ask Mr. Caramadre, tell me about these medications. Why are you taking five medications? What does each one do? What effect do the meds have on your thinking, on your mental acuity? What is the extent of your mental illness? How do you feel today? Are you depressed today? Does your mental illness affect what you are doing here today? Had the court done that, at least we would have had the beginning of a thorough and searching inquiry. If there was no inquiry at all, that's a structural error. It's a violation of Rule 11, and the court must reverse on those grounds. I see my time is up. Thank you. Good morning, Donald Lockhart for the government. It may be instructive to actually look at the list of medications that the defense attorney passed up to the court during the plea colloquy. It's set forth at page 13 of the government's addendum. If you look at that list now or later, you'll see that there are several columns. In the first column, it lists all the names of the medications. Many of them are for blood pressure, some of them are for depression. The next column states the purpose of the medication, blood pressure, blood pressure, depression, anxiety. The next column states the dosage. The next column states when taken. And if you look at the top of the list, what you see, it was last updated as of November 18th, 2012, which was the day before the defendant pled guilty. So the judge, who states in his published opinion that he reviewed that list at the plea colloquy, asked the defendant and his attorney whether any of these medications affected his ability to plead guilty. And they both said no. Later on, both defense attorneys said that they did not have the slightest concern, nor did the district court judge at the time, that the defendant could enter a knowing and voluntary plea. Not only that, we know that neither of the defendant's regular doctors said that he was incompetent to plead guilty. The only voice on the defense side on that issue was that of a paid expert who met with the defendant for two hours, three months after the effect, and reviewed some of the records. And the judge, in our view, rightfully discounted the evidence from that source. Does the judge's ability to observe the defendant during the four days of trial prior to the entry of the plea have any impact here? It has a huge impact. And not only did the judge see him, Mr. Karamadri, over the course of four days of trial, and see him at the guilty plea colloquy. Don't forget that this is a defendant who was actively engaged in negotiating the terms of the plea agreement as recently as the day before he pled guilty. He's involved in the back and forth discussions that his attorneys are having with the government. He's proposing certain conditions. He's rejecting others. Yeah, but is the judge privy to that? I mean, those plea negotiations aren't conducted before the judge or with the judge's participation, at least not in the normal case. There's no record evidence, nothing in the record on the point of whether the judge was aware of that at the time he took the plea. But we do know, of course, after the fact, that that was the case. Yeah. So the judge knows after the fact that the government attorneys think that the defendant was very engaged and very knowledgeable during the plea negotiations and therefore must have been okay despite the medication. Well, but to Judge Howard's point, that the judge is watching the defendant over the course of four days of trial. What the judge observed himself, Chief Judge Howard, as usual, is absolutely correct, all right? But all that I'm saying is, you were arguing this as if the judge had first hand knowledge of how Mr. Caramadri comported himself during plea negotiations with the government. Yeah, I'm not arguing that. The record doesn't speak to it. What I am saying, though, is that the interactions Mr. Caramadri had with his attorneys predate that and go back to the four days of trial. The judge certainly is watching him interact with his attorney in the course of the trial. Moreover, this is a defendant who is an attorney himself, don't forget. But so with respect to these observations by the judge during the trial, is there a balancing that should be taking place here? So for example, if the list of medications had included some other medications, could that tip the balance the other way and require the judge to inquire more? I take your point that it can have some impact. I'm just trying to gauge the impact that it should have where what we like to have judges do is to inquire more about the medications. Well, in this case, the judge certainly asked point blank the defendant and his attorneys whether anything in the medications affected the defendant's ability to plead guilty. And you would think that that is the most valid source of information on point. The defendant and his own attorneys surely are in a position to know best, better than- But with this number of medications and this history of best practice simply to leave that initial inquiry at the two questions the judge asked. Well, of course, ideally, a judge will inquire further. It would make this court's life much easier if the district court did. The question here is whether this all adds up to an abuse of discretion and- Well, actually, that's the question that I have, is whether that should be the question. You know that I authored an opinion recently where we loosened the reins a little bit when it came to inquiring into medications. And I'm beginning to wonder whether we should do that or whether we should have a more strict rule. Well, I mean, you can certainly point out in your opinion the best practice approach. But it's quite another thing to reverse a conviction under circumstances here, where we haven't even gotten to many of the other factors that the district court should consider in deciding whether to allow a defendant to withdraw his plea. Here, there are two factors that make this case completely unlike any other case that we've seen in the First Circuit. Number one, the finding that the defendant in this case engaged in a preconceived strategic maneuver to do this plea withdrawal, knowing in advance of the withdrawal that that's precisely what he was going to do. And doing it so that he could gain a severance, in this case, from that of his co-defendant. So you have this very Machiavellian strategy by the defendant, unprecedented as far as we can tell in the law of this circuit, to sabotage a lengthy trial that was in its fourth day and that involved 70 witnesses in the pipeline. Many of them elderly, many of them terminally ill, seven of whom had actually died prior to trial, to derail that whole process, knowing full well that he was going to just come back and move to withdraw his plea. And that in the bargain, he would get a severance. That is an enormous weighty factor that the district court placed reliance on. Well, the difficulty in placing too much reliance on that factor is that with all due respect, there's not much in the way of evidence to support it. Well, we fundamentally disagree with that, Your Honor. Well, what's the evidence to support it? I mean, there's evidence that there was a mistrial, but what's the evidence to support it? The evidence is that the defendant in a case called DeSimone. Yeah, that the defendant was present during the DeSimone trial. No, no, you've got to be careful. That's right, the defendant was present during the DeSimone trial, but he was presumably aware of the DeSimone case more broadly, including the defendant's earlier withdraw of his guilty plea. But you say presumably, all right? There's no evidence of that. Well- The only evidence is that he was present during the DeSimone trial. And I think it's kind of a reach, and frankly, one you don't need to make, all right? To say that based on that, that this was some Machiavellian scheme. Well, the court disagrees with our position on that point. I'll go to the prejudice factor, which certainly is borne out very thoroughly in the record. This is a case where we had a trial that was expected to go three to four months, 70 plus witnesses. Many of them terminally ill, many of them elderly. We can't even find a decision in the First Circuit that even remotely comes close to this case in terms of the prejudice that the government would endure if the defendant were permitted to withdraw his plea and allowed a new trial two and a half years after the fact. Remember, the district court made its prejudice finding two and a half years ago. And although we don't know on the record precisely how many witnesses may have died in the interim, or how memories may have faded, or where witnesses may have moved to, etc., etc. It stands to reason that in two and a half years, the risk of prejudice has only grown exponentially. But Mr. Lockhart, you can't use two and a half years as the measuring period. Our duty is to determine whether the district court, at the time the district court made its decision to deny the plea withdrawal motion, abused its discretion. All right, and we have to look at what the projection of prejudice reasonably was at that time. Now that may still favor the government, but the fact that the appeal has taken two years can't weigh against the defendant in that process. Well, even if you turn back the hands of time to the moment when the district court decided the plea withdrawal motion, virtually everything that I've said is still the case. The only point that I made was that the risk of prejudice necessarily grows with the passage of time. Now, on the issue of the alleged flawed legal standard in the district court's ruling, our threshold position on that is that review is for plain error. Because the defendant had four plus months between the date of the ruling and sentencing in which to bring to the judge's attention this alleged legal error based on the two sentences in the published opinion. It would have been a very easy matter to present the judge with that argument. Judge, these two sentences seem to us to reflect the fact that you have the wrong legal standard. Do you have any case where we've said that the failure to make a motion to alter or amend a judgment or order between its date and the date of final judgment can be the basis for a finding that the claim was forfeited? We have cases that we think are better, actually. Just the three illustrative cases that we cite, Pinnu, St. Hill, and Ramos. Yeah, I don't think any of those are factually comparable to this case. You may think they're better, but they're not this case, I don't think. They're not this case, but notice that in each of those cases, the defense attorney had much less time in which to lodge an objection. And yet, the plain error standard applied nonetheless. Now, the defendant says, well, these weren't final decisions, but we think that that distinction is illusory. The decision in this case was no more or less or less or more final than the decisions in Pinnu, St. Hill, and Ramos. In each case, the defense had an opportunity to correct the alleged error, but did not take the opportunity. So whether the mistake is in a written opinion, or in a bench ruling, or in a jury instruction, it seems to us shouldn't matter. What should matter is, did the defense attorney have an ample opportunity to correct the alleged error? Or was it too late to do so? Now, even assuming for the sake of argument that review is not for plain error, that the issue is preserved. The fact is, there was no error at all. The district court in this case recited the fair and just reason standard three times at the outset of its opinion. It went on to apply every single one of the factors that this court has said a district court should apply in assessing whether to allow a defendant to withdraw a guilty plea. And not only did it apply those factors, but it went into extraordinary depth as to each one of those factors. So when you consider the court's opinion as a whole, and in context with these two sentences, it is quite evident that the court did not deny this motion simply on the basis that rule 11 was complied with and that the plea was voluntary. Now, the final point to make on this front is that even if you could somehow find an error in these two sentences, that error would be harmless under any possible standard because the notion that the district court judge on remand would come out the other way based on a reevaluation of this case in light of the two sentences, the chances of that happening are close to zero. This is a judge who comprehensively weighed all of the pertinent factors and determined that the defendant's motion was borderline frivolous. The idea that this judge would go back and come out the other way based on a reconsideration in light of these two sentences borders on the absurd. So for that reason- Does that suggest that if we find reversible error in the plea colloquy, we had better remand the case to a different judge? No, I mean, you're now- Well, I mean, you've just said that the result's going to be predetermined if we remand, even if we find reversible error. That suggests to me that we better get an impartial fact finder, if that's so, if the judge has already made his mind up. The fact that a judge has strongly held views is not a basis for recusal. The fact that a judge has carefully weighed all the factors and is convinced that the defense motion is without merit is not a basis for reassigning the case. You're- That's really not so. We've said in the Halliday case that it is a reason for reassigning if we find that a trial judge has dug in on a particular position. Okay, well- But I think I've quoted accurately, dug in. Well, it's being said, we're now beginning to talk about the recusal case. I'll have to, I see I'm about to lose my time. We'll have to rest in our brief for that. Our position is that claim is outright waived, at best forfeited, and meritless under the Leitke standard. Thank you very much. Your Honor, with respect to the handing up of the list of medications. Is that what seven on the costa is all about? Is that what the case law is all about? That you can hand up a list of medications and not say a single word, not engage the defendant at all about his mental illness and about the meds? We don't even know. There's nothing in the record to even show that he looked at it. There's not a word during the colloquy with respect to this issue. And the whole point of it is that you need to discuss it with the defendant. With respect to the attorney's vouching for him that he was fine. These are attorneys who didn't bring to the court's attention the full extent of Mr. Caramadre's mental illness. These are attorneys who did not- There was no competency litigation pre-trial either. I know the standard for competency is different to stand trial as it is to plea. But Judge Smith did note his observations about trial in his order. And nobody moved to question competency leading up to trial, am I right? His attorneys did not want to upset this apple cart, Your Honor. That's why they didn't inform the court of the true extent of his mental illness. That's why they didn't inform the court when Mr. Caramadre said, I'm going to lie to the judge and perpetrate a fraud upon the court. Those attorneys wanted that plea to go through so desperately. I didn't ask you about the plea, I asked you about the trial. There was no competency litigation pre-trial, am I right? No, you are correct about that. But here's the other thing, Your Honor. Had the judge done the colloquy properly, it would have inexorably, in my view, led to a competency hearing because he would have become aware of the extent of his disability, Your Honor, with respect to the court viewing Mr. Caramadre at trial, Mr. Caramadre sat in his chair at trial. I don't know that looking at someone you can tell what level of mental distress they're in, just by seeing him sit in the chair, especially in light of the testimony from his doctors, which the court went to Herculean lens to try and downplay. These are three highly respected medical professionals, two of whom treated him for some time, all of which said he's clearly compromised. The district court looked at this question through the lens of, is he competent? Is he competent? And because of that, he is again looking at the question through the lens of the invalidity of the plea, which is, of course, a standard that is used after sentencing. Instead of looking at it as a factor in the analysis of, does this constitute a fair and just reason? Mr. Caramadre didn't have to, no one had to establish that he was incompetent for the purpose of the factor of, was he disabled? Was he compromised when he gave this plea? Your Honor, if there's any doubt about this, the doubt should be decided in Mr. Caramadre's favor. We're not reversing a conviction. We're giving him the opportunity to go to trial that he would have had, had this case been handled properly. Thank you. Thank you.